UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

---------------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 Case No. |
| | : | 10-11488 |
| Worthmore Renewable Solutions, LLC [1] | : | |
|     301 St. Charles Avenue, Third Floor | : | |
|     New Orleans, Louisiana 70130 | : | |
|     Tax ID #: 20-5130336 | : | |
| | : | |
|         Debtors | : | |

---------------------------------------------------------------x

**EMERGENCY MOTION FOR ENTRY OF ORDER PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 FOR INTERIM AND FINAL ORDERS: (1) AUTHORIZING USE OF CASH COLLATERAL; (2) GRANTING ADEQUATE PROTECTION; (3) SCHEDULING AND APPROVING THE FORM AND METHOD OF NOTICE FOR A FINAL ORDER; AND (4) FOR RELATED RELIEF**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtors and debtors in possession (collectively referred to herein as the "Debtors"), by and through its undersigned attorney, hereby move (the "Motion") this Court for entry of an order pursuant to sections 361 and 363 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*, as amended, the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), in substantially the form attached hereto as Exhibit A: (1) authorizing the Debtors to use cash collateral; (2) granting adequate protection; (3) scheduling and approving the form and method of notice of the final hearing on the Motion; and (4) for other related relief as necessary. In further support of this Motion, the Debtors respectfully state as follows:

---

[1] Winder Renewable Methane, LLC (10-11489) has requested that it be jointly administered with Worthmore Renewable Solutions, LLC (10-11488).

**JURISDICTION**

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.  The statutory bases for the relief requested herein is section 363 of the Bankruptcy Code and Rule 4001 of the Bankruptcy Rules.

**BACKGROUND**

3.  On April 30, 2010 (the "Petition Date"), the Debtors each filed for relief under chapter 11 of the Bankruptcy Code. The Debtors intend to continue to operate their businesses and manage their properties as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.  The Debtors requested that the Court enter an order directing the Debtors' chapter 11 cases be jointly administered and consolidated for procedural purposes only.

5.  This Court is referred to ¶¶ 3 - 13 of the *Debtors' Motion for Order Under Fed. R. Bankr. P. 1015(b) Directing Joint Administration of Chapter 11 Cases* ("Joint Administration Motion") [P-4] for a detailed discussion of the factual background and circumstances surrounding the Debtors' commencement of these chapter 11 cases. Capitalized terms not defined herein are as defined in the Joint Administration Motion.

6.  The Debtors believe that ACF Winder LLC ("Lender") will assert a security interest in the assets of Winder Renewable Methane, LLC including, but not limited to, the Debtors' cash collateral. The security interest asserted against Winder Renewable Methane, LLC secures a loan dated July 6, 2008.

7. As a result of the asserted security interest, Lender asserts that the cash generated by the Debtors' operations constitutes cash collateral and, as such, is entitled to protection.

**RELIEF REQUESTED AS TO USE OF CASH COLLATERAL**

8. By this Motion, the Debtors respectfully request: (a) authorization and approval, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 4001(c)(2), to (i) use cash which may constitute Cash Collateral (as defined below) on an interim basis in accordance with the proposed interim order submitted herewith (the "Proposed Interim Order") and in accordance with the budget attached hereto as Exhibit B (as may be amended, supplemented, modified or extended from time to time with the consent of the Lender or upon approval by the Court, the "Budget") (however, with respect to the Budget, on a cumulative, weekly basis, the Debtors seek authority to use Cash Collateral in an amount equal to up to ten percent (10%) more than a particular corresponding "category" in the Budget, provided that (a) Cash Collateral is available, and (b) the aggregate amount of the Budget is not exceeded by ten percent (10%), (ii) grant adequate protection liens to the Lender (iii) pending a final hearing on this Motion (the "Final Hearing"), obtain use of cash which may constitute Cash Collateral (as defined below) on a limited and interim basis to and including the date on which the Final Order is entered; and (b) in accordance with Bankruptcy Rule 4001(b)(2), that this Court schedule the Final Hearing and approve notice with respect thereto, all as more fully described in the Proposed Interim Order.

9. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may use cash collateral with court approval and after notice and a hearing.

The Debtors seek authority to use cash in bank accounts and cash generated by the Debtors' operations (collectively, to the extent such cash constitutes Cash Collateral, the "Cash Collateral"), in which the Lender asserts a valid and perfected security interest. Pursuant to 11 U.S.C. §363(e), the Court may condition the use of such cash collateral "as is necessary to provide adequate protection of" the interests of the Lender in the Cash Collateral. Pursuant to 11 U.S.C. §361, when a secured party's interest in cash collateral is entitled to adequate protection, such adequate protection may be provided by, among other things, an additional or replacement lien on assets generated post-petition "to the extent that such … use … results in a decrease in value of such entity's interest in the cash collateral." Given that the Lender asserts liens on a substantial portion of the Debtors' assets, the Debtors propose to grant a replacement lien on post-Petition Date assets, having the same respective priority as the prepetition lien, to secure any post-petition diminution in value thereof but only to the extent such interest is entitled to adequate protection against such diminution under the Bankruptcy Code.

## DISCUSSION

10. <u>The Need for Use of Cash Collateral</u>. The Debtors have an immediate need to use Cash Collateral for the purpose of meeting necessary expenses incurred in the ordinary course of their businesses, including payroll and the costs associated with their restructuring and these proceedings, while they restructure and reorganize their indebtedness and businesses in a manner that maximizes value and is fair and equitable to all parties in interest. As of the Petition Date, the Debtors possessed cash in their bank accounts (the "Petition Date Cash Collateral"). The Petition Date Cash Collateral and

future receipts from continued operations are sufficient to fund the Debtors' continued operations during the period set forth in the Budget.

11. The Budget provides for the payment of essential ordinary course operating expenses during the Budget period. A cessation of operations is not in the best interests of any party to these chapter 11 cases, including the Lender, as the Debtors' failure to operate certain facilities will immediately and irreparably impair the Debtors' extrinsic value. Additionally, the Budget provides for payment of Chapter 11 costs, including periodic payments to professionals engaged in these chapter 11 cases. As long as the Lender is adequately protected, the Debtors' use of the Cash Collateral to pay their professionals is allowed. See In re Proalert, LLC, 314 B.R. 436 (9th Cir. B.A.P. 2004) ("plain language of §363 allows a debtor to use cash collateral [to pay its professionals] if the secured creditor's interest is adequately protected"); In re Coventry Commons Assoc., 149 B.R. 109 (Bankr. E.D. Mich. 1992) (a debtor may use cash collateral to pay professional fees if the secured creditor is adequately protected, without regard to requirements of section 506 of the Bankruptcy Code); In re Tri-County Water Ass'n., Inc., 91 B.R. 547, 550 (Bankr. D.S.D. 1988) (generally, only unencumbered assets may be used to pay administrative claimants, but such claims may be paid from collateral if they resulted in a direct benefit to the secured creditor, if the secured creditor consents or if the secured creditor is adequately protected). As discussed above, the Lender is adequately protected; thus, payment of the Debtors' professionals' fees and expenses using the Cash Collateral is proper.

12. Without use of Cash Collateral on a limited basis as described herein, the Debtors will not be able to pay their employees and other direct operating expenses.

Inability to use Cash Collateral on the basis set forth in the Budget would likely result in an immediate cessation of the ongoing operations of the Debtors' businesses and would cause irreparable harm to the Debtors' estates. Put simply, the Debtors cannot continue operations that need to be conducted absent use of Cash Collateral. For this reason, the Motion is being presented on an emergency interim basis.

13. <u>Proposed Adequate Protection</u>. Whether or not a creditor is adequately protected is determined on a case-by-case basis. <u>See</u> <u>In re O'Connor</u>, 808 F.2d 1393, 1396 (10th Cir. 1987) (stating that the concept of adequate protection is a flexible one and that courts should determine whether it exists on a case-by-case basis); <u>In re Self</u>, 239 B.R. 877, 881 (Bankr. N.D. Tex. 1999) (determination of adequate protection is not an "exact science"; rather, it requires a court to balance all relevant factors); <u>In re JKJ Chevrolet, Inc.</u>, 190 B.R. 542, 545 (Bankr. E.D. Va. 1995) (stating that adequate protection is determined on a case-by-case basis).

14. Adequate protection exists by virtue of augmentation (or preservation) of the value of a secured creditor's collateral. <u>See</u> <u>In re Ralar Distribs., Inc.</u>, 166 B.R. 3, 6 (Bankr. D. Mass. 1994) ("[a]ctivities of a debtor can enhance collateral value and thereby provide adequate protection"); <u>In re T.H.B. Corp.</u>, 85 B.R. 192, 195 (Bankr. D. Mass. 1988) ("[T]he stream of cash collateral will likely remain at an approximate even level over a sustained period, with new proceeds replacing old. The constant nature of this stream gives the [secured lender] protection for its cash collateral."); <u>In re Pursuit Athletic Footwear, Inc.</u>, 193 B.R. 713, 716-717 (Bankr. D. Del. 1996) (court found secured creditor was adequately protected given lack of evidence that collateral was diminishing, debtor had operated profitably and was projected to continue operating

profitably); In re Pine Lake Vill. Apartment Co., 19 B.R. 819 (Bankr. S.D.N.Y. 1982) (where property which secured mortgagee's claim was experiencing no depreciation and was arguably being enhanced in value and where the value of the property securing the claim was increasing to the extent of unspent rental income being accumulated in segregated cash collateral accounts, mortgagee had adequate protection).

15. As adequate protection for the Debtors' use of Cash Collateral hereunder (collectively, the "Post-Petition Obligations"), the Lender will be granted, effective immediately and without the necessity of the execution by the Debtors of financing statements, mortgages, security agreements, or otherwise, in accordance with section 361(2) of the Bankruptcy Code, replacement security interests in and liens on (the "Adequate Protection Liens") all post-petition assets of the Debtors and their estates on which the Lender held valid and perfected liens as of the Petition Date and all proceeds, rents and products of all of the foregoing and all distributions thereon (collectively, the "Post-Petition Collateral"), in the same respective priority it held prior to the Petition Date, and subject only to valid, perfected, enforceable and nonavoidable liens and security interests granted by law or by the Debtors to any person or entity that were superior in priority to the prepetition security interests and liens held by the Lender, and only to the extent such prepetition senior liens are not otherwise subject to avoidance or subordination, which Adequate Protection Liens are granted to secure the amount of any post-petition diminution in the value of the Lender's interests in the Cash Collateral to the extent such interests are entitled to adequate protection against such diminution under the Bankruptcy Code. Notwithstanding the foregoing or anything herein to the contrary, the Post-Petition Collateral shall not include any claims, causes of action and proceeds

thereof arising under sections 510, 544, 545, 546, 547, 548, 549, 550 and 551 of the Bankruptcy Code (collectively, "Avoidance Actions").

16. The Debtors assert that all Cash Collateral now existing and hereafter acquired will be deposited and maintained by the Debtors in certain bank accounts (the "Cash Collateral Accounts"), pending disbursement in the ordinary course of business of the Debtors consistent with the provisions of the Proposed Interim Order and the Budget.

17. The Budget includes (a) the Debtors' aggregate projected sources and uses of cash over the Budget period and (b) summaries of the Debtors' operating properties' impact on and contributions to the Debtors' cash budget.

18. Interim Approval of the Use of Cash Collateral Should Be Granted. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 may not be commenced earlier than fifteen (15) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

19. Pursuant to Bankruptcy Rule 4001(b), the Debtors request that the Court conduct a preliminary expedited hearing as soon as practicable (the "Preliminary Hearing") to enter the Proposed Interim Order authorizing the Debtors to use Cash Collateral in an aggregate amount not to exceed the amounts set forth in the Budget (other than as described herein) attached to the Proposed Interim Order pending the Final Hearing.

20. The ability of the Debtors to finance, through the use of Cash Collateral, their ongoing operations as they restructure their indebtedness and businesses for the

benefit of all creditor constituencies is in the best interests of the Debtors, all of their creditors and their estates. The relief requested herein is necessary in order to avoid immediate and irreparable harm and prejudice to the Debtors' estates and to all parties in interest in the Debtors' chapter 11 cases. The Debtors have an urgent and immediate need to use Cash Collateral to continue their business operations while they pursue a restructuring or alternate exit to these chapter 11 cases. The Debtors' businesses will be immediately and irreparably harmed without authorization from the Court to use Cash Collateral, as requested, on an interim basis pending the Final Hearing, and the Debtors' restructuring efforts will be over.

21. The interests of the Lender in the Cash Collateral will be adequately protected pursuant to the Proposed Interim Order.

22. The terms of the Proposed Interim Order are incorporated herein and made a part hereof by this reference. Pending the Final Hearing, this Motion should be granted on an interim basis, on the terms set forth in the Proposed Interim Order, in order to maximize the value of the estates and to prevent irreparable harm to the Debtors prior to the Final Hearing.

## REQUEST FOR FINAL HEARING

23. Pursuant to Bankruptcy Rule 4001(c)(2), the Debtors respectfully request that this Court set a date for the Final Hearing that is no later than thirty (30) days from the Petition Date and approve the provisions for notice of such Final Hearing that are set forth in the Proposed Interim Order.

24. The Debtors request that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for filing objections, if any, by first-class

United States Mail upon the following: (i) the United States Trustee; (ii) Whitney National Bank, Attn: Sandra McClain Cuttera, Commercial Loans Operations, 228 St. Charles Avenue, New Orleans, Louisiana 70130; (iii) the 20 largest unsecured creditors on a consolidated basis; (iv) all parties who request notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure; (v) the Louisiana Attorney General; (vi) the Internal Revenue Service; (vii) ACF Winder, LLC (Archer), through its counsel, Christine N. Schneider, Bryan Cave LLP, One Atlantic Center, 14th Floor, 1201 W. Peachtree Street, NW, Atlanta, Georgia 30309; (viii) Municipal Gas Authority of Georgia, 104 Town Park Drive, Kennesaw, Georgia 30144; (ix) Republic Services of Georgia, L P, Attn: General Manager, 967 Carl Bethlehem Road, Winder, Georgia 30680; (x) Robert Sales, Archer Capital Management, 570 Lexington Avenue, 40th Floor, New York, New York; and (xi) all parties entitled to notice under Rule 2002(j) of the Federal Rules of Bankruptcy Procedure. The Debtors request that the Court consider such notice of the Final Hearing to be sufficient notice under Rule 4001 of the Bankruptcy Rules.

25. Notice of this Application has been given to: (i) the United States Trustee; (ii) Whitney National Bank, Attn: Sandra McClain Cuttera, Commercial Loans Operations, 228 St. Charles Avenue, New Orleans, Louisiana 70130; (iii) the 20 largest unsecured creditors on a consolidated basis; (iv) all parties who request notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure; (v) the Louisiana Attorney General; (vi) the Internal Revenue Service; (vii) ACF Winder, LLC (Archer), through its counsel, Christine N. Schneider, Bryan Cave LLP, One Atlantic Center, 14th Floor, 1201 W. Peachtree Street, NW, Atlanta, Georgia 30309; (viii) Municipal Gas Authority of

Georgia, 104 Town Park Drive, Kennesaw, Georgia 30144; (ix) Republic Services of Georgia, L P, Attn: General Manager, 967 Carl Bethlehem Road, Winder, Georgia 30680; (x) Robert Sales, Archer Capital Management, 570 Lexington Avenue, 40th Floor, New York, New York; and (xi) all parties entitled to notice under Rule 2002(j) of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**WHEREFORE**, the Debtors respectfully request that this Court (a) conduct an emergency hearing on this Motion; (b) enter the Proposed Interim Order substantially in the form submitted herewith; (c) schedule a Final Hearing on the relief requested herein; and (d) grant such further relief as may be equitable and just.

New Orleans, Louisiana, this 30th day of April, 2010.

Respectfully submitted,

/s/ Douglas S. Draper
Douglas S. Draper, LA Bar No. 5073
Leslie A. Collins, LA Bar No. 14891
Heller, Draper, Hayden, Patrick
 & Horn, LLC
650 Poydras Street, Suite 2500
New Orleans, LA 70130-6103
Telephone: 504-299-3300
Fax: 504-299-3399
Counsel for Debtors